## Cramer, et al. v. Eline, et al.

(Decided February 7, 1913.)

Appeal from Jefferson Circuit Court.
(Chancery Branch, First Division.)

1. Deeds—Life Estate—Remainder.—Where land was conveyed to a daughter during her natural life, with reversion to her mother or to her legal representatives in case the life tenant should die without heirs, the daughter took a life-estate, and upon her death without issue, the mother or her heirs took the remainder.

2. Election of Remedies.—Where land held by a daughter for life, with remainder to her mother, was sold under a void judgment in an action brought for a sale and re-investment of the proceeds in other land, and the purchase money was paid and re-invested in other property, the owners of the remainder estate cannot assert their ownership to both tracts of land; but, having established their ownership to the property in which the proceeds of sale were re-invested, they will be required to stand by their election of remedies, and cannot recover the land which was irregularly sold in the action for re-investment.

3. Equitable Remedies — Subrogation — Election — Ratification. — In cases of this character equity always seeks to preserve the rights of all concerned, if it can be done; and, when necessary, those rights will be preserved and worked out through the equitable doctrines of subrogation, election and ratification, whenever their application will not work a hardship or injustice.

THUM & ROY, O'NEAL & O'NEAL, NATHAN KAHN and KOHN, BINGHAM, SLOSS & SPINDLE, for appellants.

BENJAMIN F. WASHER and FRED FORCHT, JR., for Fred. Eline.

TYLER BARNETT, for J. B. Wathen.

OPINION OF THE COURT BY JUDGE MILLER.—Affirming.

The appellants, fourteen in number, were plaintiffs in the court below, and by their petition sought to dispossess the appellee of ten acres of land, on Beargrass Creek, in Jefferson County, which, prior to 1852, belonged to John Doup. John Doup married Matilda Noel, a widow, who had two children, Ann Noel and Rebecca Noel, by her first husband. On June 17, 1852, John Doup conveyed said ten acres to Ann Noel, the language of the deed, so far as it is material, reading as follows:

"In consideration of the esteem and affection and the

adoption of the aforesaid Ann, as one of my children (now my step-daughter), I hereby give, grant and convey, to the said Ann the aforesaid ten acres of ground, to have and to hold same during her natural life, and if she should die without heirs, then and in that case the same shall revert to her mother, or her legal representatives, and in the event the said Ann should have married, the husband shall not have the power or right to sell or alienate the same."

While the foregoing clause contains some loose expressions in the use of the terms "revert," "heirs," and "legal representatives," we think it is apparent that it was the intention of the grantor, and the effect of the deed was, to vest a life estate in Ann with remainder to her mother, or her heirs, in case Ann should die childless.

This case does not come within the rule announced in Alexander v. de Kermel, 81 Ky., 345, Coomes v. Frey, 141 Ky., 741, and similar cases holding that where there is a conveyance to one for life, and in case of the grantee's death without heirs, the land shall revert to the grantor or his heirs, the grantor takes a fee upon the happening of the event, because the attempted reversion here is not to the grantor, or his heirs, but to a stranger to the deed.

Ann Noel married W. H. Robinson, who, in 1858, brought an action in the Louisville Chancery Court against Ann Robinson, his wife, and John Doup and Matilda Doup, for the purpose of selling said ten acres and re-investing the proceeds in other real estate, to be held on the same terms and limitations as those prescribed in the Doup deed of June 17, 1852. The property was sold under a judgment of the court on April 19, 1858, to Floyd Parks, the predecessor in title of the appellee Eline, for $1,800.00, which sum, as shown by the report of the appraisers filed in said action, was the full value of the fee simple title. The sale was duly confirmed, but no deed was ever made to Parks. He executed his two promissory notes, however, for $1,000.00 and $800.00, respectively, which he paid. By an order of the court $1,000.00 of this sum was re-invested in a lot on the southwest corner of Clay and Main Streets, in Louisville, bought from Robert J. Breckenridge, Jr., and the remaining $800.00 was used in improving said lot. These investments, and the deed to the Main Street lot, were examined and formally approved by the chancellor. **On**

the same day of the sale—April 18, 1858—John and Matilda Doup conveyed their interest in the ten acres to Floyd Parks. This fact may account for Parks' failure to ask and get a deed, and bears out the contention hereinafter pointed out, that Parks acquired, or thought he acquired, a title to the fee of the ten acres by virtue of the sale and the deed from John Doup and wife.

Ann Robinson held the Clay Street property until July 21, 1898, when she sold her interest therein to Patrick O'Brien, and from O'Brien it passed, by *mesne* conveyances, to the Metropolitan Realty Co., in April, 1909. On June 12, 1911, Ann Robinson died without issue, the appellants, who were plaintiffs below, being the descendants of her sister, Rebecca, who had married McCaleb. After the death of Ann Robinson the appellants asserted claim to the Clay Street property, as heirs at law of Matilda Doup, under the deed of 1852; and, in order to acquire the interest of appellants in said lot, the Metropolitan Realty Co. paid appellants $2,800.00, in cash, and took from them quit claim deeds bearing date August 8, 1911, and September 11, 1911.

On September 15, 1911, appellants instituted this action to recover the ten acres, claiming that the chancery judgment of 1858, under which the ten acres had been sold to Floyd Parks, was void, and the sale passed no interest to the purchaser, or, at most, only the life estate of Ann Robinson, and that upon her death in 1911, without heirs, Matilda Noel having died in 1866, the fee of said ten acres vested in the children of Rebecca Noel McCaleb under the Doup deed of 1852.

The proceedings taken in the Robinson suit of 1858, were void for want of jurisdiction. The petition, however, sought to sell said ten acres upon the ground that it did not yield a reasonable return upon the investment, and to re-invest "the proceeds in other real estate to be held on the terms mentioned in said deed to Ann Noel." Ann Noel Robinson and Matilda Doup answered, consenting to the sale of the ten acres, and the re-investment of the proceeds as prayed for, their consent having been taken and certified by the commissioner separately and apart from their respective husbands. In a separate answer John Doup consented to the sale, and asked that the proceeds be re-invested in real estate, or in Kentucky bank stocks. Proof having been taken, the chancellor, in a memorandum opinion, expressed his doubts as to the

validity of the proceedings, under the Revised Statutes then in force, in so far as it undertook to sell anything more than the contingent interest of Matilda Doup. However, the chancellor seems to have changed his opinion, since he entered a judgment on March 29, 1858, directing that the interest of said Ann Robinson in said land be sold. The sale was made to Parks for $1,800.00, which was the full value of the fee as appears from the report of the commissioners filed at the time, and the money was re-invested in the Clay Street property, as above indicated.

Upon the trial of this action the circuit judge held that the legal effect of the Doup deed of 1852, was to vest a life estate in Ann Noel, with remainder in fee to such of her children as should survive her, but that she having died without issue, the remainder went to the appellants as the legal representatives or heirs of Matilda Doup. The circuit judge further held, however, that the effect of the chancery proceedings of 1858, and the sale thereunder, was to vest Parks with a fee simple title to the ten acres. He therefore dismissed the petition; and the plaintiffs appeal.

Whatever may have been the doubts of the chancellor who entered the judgment in the Robinson suit in 1858, it is true beyond question that all the parties to those proceedings thought that Parks had, by his purchase and the deed from John and Matilda Doup, obtained a fee simple title to the ten acres; otherwise, there would have been no reason for investing the entire proceeds in the Clay Street property. If the chancery sale of 1858 had conveyed only the interest of Ann Noel Robinson in the ten acres, she was entitled to the purchase money absolutely, which of course would not have amounted to the full value of the land. When we consider, therefore, that the suit was brought to sell the fee; that the land brought its full value, and that the proceeds of the sale were re-invested in the Clay Street property, upon the same terms that the ten acres had been held under the Doup deed, there can be no doubt that all parties concerned treated the proceedings as having accomplished the purposes sought in the petition, and that the Clay Street property took the place of the ten acres, and represented the re-investment. The appellants so treated it when they, as the heirs of Matilda Doup, asserted their ownership of the Clay Street prop-

erty; they could not have maintained their claim except by virtue of the provisions in the original Doup deed, which had been incorporated in the Breckenridge deed.

In cases of this character equity always seeks to preserve the rights of all concerned, if it can be done; and, when necessary, those rights will be preserved and worked out through the equitable doctrines of subrogation, election, and ratification, whenever their application will not work a hardship or injustice. If the sale under the chancery proceedings of 1858 was void for want of jurisdiction, as appellants contend, they could have elected to assert their ownership either to the ten acres, or to the Clay Street property; but, clearly they would not be allowed to assert their rights to both, for to permit them to do so would either work an injustice to Eline, the owner of the ten acre tract, or to the owner of the Clay Street property. If appellants had successfully asserted their claim against the ten acres, Eline, standing in the shoes of Parks, the original purchaser, would unquestionably have had the right to assert his loss for his ten acres thus taken from him, against the Clay Street property; and no action by way of election of remedies upon the part of appellants could defeat that right.

This principle was recognized in Forst v. Davis, 101 Ky., 343. In that case the bid of the purchasers at the decretal sale was transferred to the executrix in her own right; and she having paid a large part of the indebtedness of the decedent in consideration of the assignment to her of the bid, and the sale having been declared void, the court held that she was entitled to have repaid to her such sums as she had paid therefor out of her own funds, and that her vendee was entitled to be subrogated to her rights to the extent of the payments made by him to her for the land sold, not exceeding, however, the amount paid by her as the consideration for her original purchase.

And in Hall v. Dineen, 26 Ky. L. R. 1017, 83 S. W., 120, where a judicial sale was held invalid, and set aside after the purchaser had paid a part of his purchase money, the court held the purchaser was entitled to recover back the purchase money he had paid, with interest, including taxes and cost of improvements, to the extent that they had enhanced the vendable value of the land, the same to be secured by a lien upon the land.

It being apparent, therefore, that if appellants had elected to proceed against Eline to recover the ten acres

only, and that he would have been enabled, in turn, to assert his claim against the Clay Street property and thereby save himself harmless, the appellants will not be permitted by first asserting their claim against the Clay Street property to thereby deprive Eline of his right of protection.

Appellants had one cause of action, and were entitled to one recovery. If they had sought to recover both properties, can it be doubted that they would have been required to elect between the two? We think not. Appellants could have chosen either, but not both, of said tracts, since they represented but a single estate; but, having elected to establish their claim against the Clay Street property, which was but a substitute for, and a reinvestment of the purchase price of the ten acre tract, they will be required to stand by their election.

Judgment affirmed.